**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**VERTOL H21C, REGISTRATION NO.
N8540, in rem, Defendant,**

**Aviation Contractors, Inc.,
Claimant-Appellee.**

No. 74–3071.

United States Court of Appeals,
Ninth Circuit.

Nov. 1, 1976.

Richard I. Chaifetz, Atty. (argued), of Crim. Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Maribeth Halloran (argued), of Lorenz, Greene, Kelley & Halloran, San Francisco, Cal., for claimant-appellee.

Before MERRILL and HUFSTEDLER, Circuit Judges, and KING,\* District Judge.

KING, District Judge:

On October 2, 1972, the Federal Aviation Administration (hereinafter "FAA") unilaterally determined that Aviation Contractors, Inc. (hereinafter "Aviation") had violated certain FAA regulations relating to helicopters.[1] Pursuant to its authority under 49 U.S.C. § 1471(a)(1) the FAA determined to seek $6,000 in civil penalties from Aviation. On October 13, 1972, acting under 49 U.S.C. § 1473(b)(2),[2] the FAA seized the defendant helicopter. On November 15, 1972, this *in rem* action against the helicopter was begun. The government sought to have the district court impose the $6,000 in civil penalties which the FAA claimed that Aviation should be assessed.[3] On the same day that the *in rem* action was begun the aircraft passed into the custody of the United States Marshal upon the issuance of a

---

\* The Honorable Samuel P. King, Chief United States District Judge for the District of Hawaii, sitting by designation.

1. The regulations involved prohibit using helicopters "for compensation or hire" in external load operations without certain FAA licenses. *See* 14 C.F.R. § 91.39 and § 133.11. Aviation contends that the particular leasing arrangement under which it operated its helicopter did not come within the "compensation or hire" terms of the regulations.

2. 49 U.S.C. § 1473(b)(2) provides:
   Any aircraft subject to such lien may be summarily seized by and placed in the custody of such persons as the Board or Administrator may by regulation prescribe, and a report of the cause shall thereupon be transmitted to the United States attorney for the judicial district in which the seizure is made. The United States attorney shall promptly institute proceedings for the enforcement of the lien or notify the Board or Administrator of his failure to so act.

3. To collect a penalty, the FAA must begin an *in rem* or *in personam* action in the United States District Court; the FAA may not impose the penalty itself. *See* 49 U.S.C. § 1473(a), (b)(1) and Vol. III, pp. 28–30.

warrant of arrest by the court clerk. On May 31, 1974, acting pursuant to 49 U.S.C. § 1473(b)(3), the FAA released the helicopter to Aviation in exchange for a certificate of deposit in the amount of $6,000.

On June 5, 1974, the district court denied the government's motion for summary judgment ordering Aviation to pay the $6,000 penalty. At the same time, the court granted Aviation's motion for the release of the $6,000 certificate of deposit on the ground that the helicopter for which it had been substituted had been seized without affording Aviation due process of law. It is with the latter aspect of the district court's decision that this appeal is concerned.

■ Preliminarily, we reject Aviation's contention that the district court's order was not a "final decision" within the meaning of 28 U.S.C. § 1291 and that therefore this court does not have jurisdiction to hear this appeal. As the first sentence of both the complaint and the district court's opinion make clear, this was an *in rem* action against the helicopter. The release of the helicopter (and the substituted security) ended the *in rem* action. *See American Bank of Wage Claims v. Registry of the District Court of Guam*, 431 F.2d 1215 (9th Cir. 1970), and *Seabord & Caribbran Transport Corp. v. Hafen-Dampfschiffahrt A.G. Hapag-Hadac Seebaderdienst*, 329 F.2d 538 (5th Cir. 1964). Aviation's argument that the FAA may now proceed to collect the $6,000 penalty, *see* 49 U.S.C.A. § 1473(b)(1), does not in any way defeat this court's jurisdiction.

Turning to the merits of this appeal, we agree with the district court that the procedure followed in effecting the seizure of the aircraft in this case denied Aviation due process of law.[4] There can be no dispute that Aviation was deprived of its property within the meaning of the Fifth Amendment and was therefore entitled to due process protections. That the deprivation was only temporary can make no difference. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Finding this deprivation, however, only begins our inquiry since the Supreme Court has recently taken several different approaches in determining the necessity for pre-seizure hearings. In one case the Court stated:

[w]e have repeatedly held that no hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective. . . . It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination. *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 612, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1972), quoting *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

On the other hand, the Supreme Court has also said that:

There are "extraordinary situations" that justify postponing notice and opportunity for a hearing. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. *Fuentes v. Shevin*, 407 U.S. 67, 90, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972) (citations and footnotes omitted).

In its most recent opinion in this area, the Supreme Court left unclear whether the "hearing at some stage" approach of *Mitchell* or the "extraordinary situation" requirement of *Fuentes* should guide the courts in the future. *See North Georgia Finishing, Inc. v. Di-Chem, Inc., supra*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751. Fortunately, we need not choose between these approaches to resolve this case. Rather, we shall adopt still another approach utilized by the Supreme Court and determine the constitutionality of this seizure by comparing "the precise nature of the government function involved" with the "private interest that has been affected by governmental action". *See Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

---

4. *Compare Aircrane, Inc. v. Butterfield*, 369 F.Supp. 598 (E.D.Pa.1974) (three judge court).

The private interest in this case is substantial. We agree with the trial court's finding that the government "effectively paralyzed" claimant's business by seizing the helicopter. This deprivation certainly rivals in severity the seizure of various types of consumer products. *Compare Fuentes v. Shevin, supra,* 407 U.S. at 88, 92 S.Ct. 1983. Indeed, the seizure would appear to "drive [claimant] to the wall" as severely as the ex parte prejudgment garnishment procedures so roundly condemned in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). We also note from the record the substantial possibility that the physical condition of the helicopter was allowed to deteriorate while in government custody.

There is little that the government can offer to counterbalance the substantial private interest at stake in this case. It appears that the sole justification for the seizure was to facilitate the collection of the penalty sought by the FAA. There is almost no evidence in the record which detracts from the district court's conclusion that this seizure was not directly related to public safety considerations. In addition, the government's contention to the contrary is belied by the statutory bonding procedure. *See* 49 U.S.C. § 1473(b)(3). This procedure, which was utilized in this case, permits the aircraft to be reclaimed and put back into operation upon deposit of a bond by the claimant. We further note that the FAA has a wide range of powers to act quickly when air safety is in fact directly threatened. *See* 49 U.S.C. § 1429 (permitting ex parte revocation of air-worthiness certificate)[5] and 49 U.S.C. § 1485 and § 1487 (authorizing ex parte orders by FAA when essential to air safety).

■ We are of the opinion that the government's interest in facilitating the collection of the $6,000 penalty is plainly insufficient to support the summary seizure of Aviation's helicopter. *Cf. North Georgia Finishing, Inc. v. Di-Chem, Inc., supra,* 419 U.S. 610, 95 S.Ct. 719. The government's interest in this case is not nearly as strong as it is in those situations in which prehearing seizures have been approved. *See, e. g., Ewing v. Mytinger, supra,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed.2d 1088 (seizure of misbranded food); *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed.2d 2030 (1947) (conservator may seize assets of failing bank); and *North American Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure of contaminated foods). While in certain situations the Internal Revenue Service may utilize summary proceedings to ensure the collection of the internal revenue of the United States, *see Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 738 (1931), we refuse to extend this rule to empower other governmental agencies to summarily take property as security for the eventuality that civil penalties must, in fact, be paid.[6]

Such a rule would be particularly inappropriate in this case since there has been no showing of a "special need for very prompt action," to protect the government's interest. *See Fuentes v. Shevin, supra,* 407 U.S. at 91, 92 S.Ct. at 2000 and *compare Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). There is no allegation or other indication in the record that Aviation would not, or could not, pay any penalty assessed against it unless the helicopter was seized. The power of the FAA to proceed *in personam* to collect the penalty further diminishes the necessity of summary action. *See* 49 U.S.C. § 1473(b).

This seizure embodied none of the procedural protections which the Supreme Court has emphasized in determining the constitutionality of prehearing seizures. These protections were most clearly articulated in

---

5. The FAA's authority to move summarily under 49 U.S.C. § 1429 has recently been upheld in *Morton v. Dow,* 525 F.2d 1302 (10th Cir. 1975) and *Air East, Inc. v. National Transportation Safety Board,* 512 F.2d 1227 (3rd Cir. 1975).

6. In addition, the government does not contend that violations of FAA regulations are so numerous that a requirement of pre-seizure hearings will unduly hamper FAA enforcement efforts. *See* Friendly, "Some Kind of Hearing", 123 U.Pa.L.Rev. 1267, 1303 (1975).

**652**

*Mitchell v. W. T. Grant, supra,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406, where the Court relied on four procedural requirements in upholding the constitutionality of a Louisiana sequestration statute. First, the Court attached considerable weight to the fact that the writ of sequestration was issued by a judge, not by a court clerk. *See id.* at 616, 94 S.Ct. 1895 and *see also North Georgia Finishing, Inc. v. Di-Chem, Inc., supra,* 419 U.S. at 607, 95 S.Ct. 719. Second, in view of the relatively simple and narrowly drawn questions relevant to the issuance of the writ, the Court found that the affidavits required by the Louisiana statute were sufficiently detailed to reduce the chance of a wrongful sequestration. *See Mitchell v. W. T. Grant, supra,* 416 U.S. at 617, 94 S.Ct. 1895. Another factor on which the Court relied was that the movant-creditor was obliged to post sufficient bond to protect the debtor in the event the sequestration was later declared to have been "improvident". *Id.* at 606, 94 S.Ct. 1895. Finally, the Court noted the availability of an early hearing at which the creditor could be required to prove the grounds upon which the writ was issued. *See id.* at 618, 94 S.Ct. 1895.

In this case, the FAA executed the initial seizure without filing any papers with any court and without seeking the approval of any court officer, much less the approval of a judge. To make matters worse, the warrant of arrest which was issued one month after the initial seizure was not issued by a judge but by the court clerk. The bare affidavit filed by the U.S. Attorney on which the clerk's action was based merely alleged that a violation of the Federal Aviation Act had been committed; it was not possible to determine from the affidavit whether the U.S. Attorney's view was correct or whether the seizure was warranted. There was no requirement that a bond be posted by the government before the seizure was approved. Finally, the statute does not provide for a prompt post seizure hearing to determine whether there is good cause to continue the aircraft in government custody. Thus, in all important respects, the seizure in this case lacks the

protections which the Supreme Court emphasized in *Mitchell v. W. T. Grant, supra,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406.

For the reasons set forth above, the district court's order is affirmed.