**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**LOCKHEED L–188 AIRCRAFT,
Registration No. N12VG, in
rem, Defendant-Appellant,**

**and**

**International Air Leases, Inc.,
Claimant-Appellant.**

**No. 77–1131.**

United States Court of Appeals,
Ninth Circuit.

Feb. 15, 1979.

Marvin Zinman (argued), Los Angeles, Cal., for defendant-appellant.

Jack G. Collins, Asst. U. S. Atty. (argued), Portland, Ore., for plaintiff-appellee.

Before VAN DUSEN,* WRIGHT and GOODWIN, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

International Air Leases, Inc. (IAL), owner of an aircraft seized by Federal Aviation Administration (FAA) officials for violation of FAA regulations, appeals from an *in rem* judgment against the aircraft for civil fines and penalties amounting to $165,600. IAL appeals also from pretrial orders dismissing its counterclaim based on the Tucker Act, 28 U.S.C. § 1346(a)(2) and denying leave to file an amended counterclaim based on the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b).

## FACTS

IAL, based in Miami, leases aircraft "dry," that is, without supplying crew or participating in the operation of leased aircraft. It leased a Lockheed L–188 to Air Houston Corporation, which subleased it, with IAL's consent, to Air Flow Corporation.

* Senior Circuit Judge for the Third Circuit.

Air Flow used the aircraft to carry passengers on gambling junkets from the Pacific Northwest and California to Reno and Las Vegas and return. IAL asserts that the aircraft was certified as airworthy when it left Miami, and that IAL had no connection with Air Flow's operations except to collect a flat monthly rent.[1]

Pursuant to 49 U.S.C. § 1473 and 14 C.F.R. § 13.17, the FAA seized the aircraft on February 8, 1974, believing that it had been involved in violations of FAA safety regulations by those conducting the gambling junkets.[2] On February 15, the government · filed *in personam* actions against Air Houston, Air Flow, and others, and an *in rem* action against the aircraft.

The aircraft was seized again on February 28 by a United States Marshal pursuant to process from the district court. It was released in June of 1974 when IAL posted a $25,000 bond which replaced the aircraft as the *res* of the *in rem* action.

█ In a jury trial, only IAL contested the government's claim to the aircraft.[3] The jury specifically found 552 separate violations of FAA regulations which subjected the aircraft to $165,600 in fines and penalties. The judgment in that amount was ordered satisfied from the $25,000 bond substituted for the aircraft.[4] The jury also found as to each violation that the pilot in command of the aircraft was involved in the violations, a finding which was essential to establishing *in rem* jurisdiction.[5]

## THE TUCKER ACT

█ IAL asserts a $10,000 claim[6] against the government, consisting primarily of loss of rental revenue resulting from the seizure of the aircraft. Because the government cannot be sued without its consent, *United States v. Shaw*, 309 U.S. 495, 500, 60 S.Ct. 659, 84 L.Ed. 888 (1940), IAL must demonstrate that the government has waived its immunity to the kind of claim it asserts. This is true of a counterclaim as well as of an original suit. *United States v. Finn*, 239 F.2d 679, 682 (9th Cir. 1956).

In the Tucker Act, the government consented to be sued in district court in civil actions or claims against the United States:

> not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States,

1. The government disputes IAL's posture as an innocent lessor with no knowledge of the manner in which the aircraft was used. It points out that IAL's president had previously leased other aircraft "for the purpose of flights to gambling casinos" and "had had another aircraft owned by him seized on a previous occasion." Appellee's brief at 9.

2. The regulations involved are those at 14 C.F.R. § 121 (1976), *e. g.*, failure to have required management personnel, § 121.59(a); failure to show approval of area and route, § 121.113; failure to show competent maintenance personnel and adequate maintenance facilities, § 121.213; and failure to show an approved inspection and maintenance program, § 121.367.

3. All *in personam* defendants except Air Houston, its owner, James Hoffman, Lyle Gilmore, an Air Flow principal, and Jenny, Inc., a Nevada corporation, reached settlements before trial. The *in personam* defendants who did not settle failed to appear. Default

judgments against them were included in the pretrial order.

4. The parties stipulated and the district judge ordered that, if the government won a final judgment in excess of $25,000, the $25,000 bond plus interest would be paid to the government in full satisfaction of the judgment. That is what ultimately occurred.

5. 49 U.S.C. § 1471(a)(1) (1976) states that persons who violate statutes or regulations dealing with air safety are subject to civil penalties. Section 1471(b) provides:

> In case an aircraft is involved in such violation and the violation is by the owner or person in command of the aircraft, such aircraft shall be subject to lien for the penalty:
> · · ··

6. IAL alleges damages in excess of $10,000, but has limited its claim to $10,000 in order to come within the Tucker Act jurisdictional limit. Waiving excess recovery is permissible under the Act. *E. g., United States v. Johnson*, 153 F.2d 846 (9th Cir. 1946).

or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1346(a)(2) (1976).[7]

■■■ The district court held that IAL's claim sounded in tort and was not cognizable under the Tucker Act. IAL maintains that it does not seek tort damages and characterizes its claim instead as one for damages arising from an unconstitutional forfeiture. So characterized, the claim comes within the Tucker Act's grant of jurisdiction to hear cases "founded . . upon the Constitution." [8]

In the *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 125–26, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), the Supreme Court construed 28 U.S.C. § 1491 which defines Tucker Act jurisdiction in the Court of Claims. The language of § 1491 is identical to that of § 1346(a)(2) except that § 1491 does not contain a jurisdictional amount. The Court said that a claim for the taking of property without just compensation in violation of the Fifth Amendment "plainly would fall within the literal words of 'any claim against the United States founded . . upon the Constitution.'" The same is true of claims for "the return of fines and costs based upon unconstitutional convictions." *Neely v. United States*, 546 F.2d 1059, 1063 (3rd Cir. 1976) (§ 1346(a)(1)).

■■■ Here, IAL contends that the seizure of its aircraft violated due process because the FAA neither notified it in advance of seizure nor held a pre-seizure hearing. The statutes and regulations which authorized the seizure do not require the FAA to give the notice or hearing that IAL argues is necessary. 49 U.S.C. §§ 1471(b), 1473(b)(2)(1976); 14 C.F.R. § 13.17 (1978).

Nevertheless, in *United States v. Vertol H21C Reg. No. N8540*, 545 F.2d 648 (9th Cir. 1976), this court held that seizure of a helicopter pursuant to these FAA provisions, without advance notice and opportunity for hearing, violated the due process clause of the Fifth Amendment because "the sole justification for the seizure was to facilitate the collection of the penalty sought by the FAA," 545 F.2d at 651; and there was "no showing of a 'special need for very prompt action,' to protect the government's interest." *Id., comparing Fuentes v. Shevin*, 407 U.S. 67, 91, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) *with Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).[9]

The procedural setting of this case differs from that in *Vertol*. There, the helicopter owners questioned the illegal seizure as a defense in the forfeiture proceedings. They moved for return of the $6,000 certificate of deposit substituted for the aircraft as the *res* of the *in rem* action. The district court granted the motion and this court affirmed. There was no discussion of the Tucker Act or any implication that the court needed an independent jurisdictional ground to entertain the defense.

■■■ Here, IAL questioned the illegal forfeiture in its counterclaim, seeking return of the aircraft and $10,000 in damages. As a threshold matter, it is clear that IAL's claim initially exceeded the $10,000 Tucker Act jurisdictional limit because the aircraft was worth at least $25,000. *See United States v. Finn*, 239 F.2d 679 (9th Cir. 1956).

After the counterclaim was filed, the $25,000 fund was substituted for the plane. The counterclaim was not amended to reflect this change, and the district court then dismissed it.

---

7. The government also consented to be sued in the Court of Claims with no jurisdictional limit. 28 U.S.C. § 1491 (1976).

8. It was established early that the statute creates four distinct classes of cases:

(1) those founded upon the Constitution or any law of Congress, . . . ; (2) cases founded upon a regulation of an executive department; (3) cases of contract, express or implied, with the government; (4) actions for damages, liquidated or unliquidated, in cases *not sounding in tort*. The words "not sounding in tort" are in terms referable only to the fourth class of cases. (Emphasis in original.) *Dooley v. United States*, 182 U.S. 222, 224, 21 S.Ct. 762, 763, 45 L.Ed. 1074 (1901).

9. The government argues that there were exigent circumstances, the unsafe condition of the aircraft, which required its immediate seizure.

On appeal, IAL does not argue that it is entitled to the $25,000 fund substituted for the aircraft in addition to the $10,000 in damages. It asks that we vacate the $25,000 judgment "because the same would be subject to possible offset in the event IAL succeeds in establishing its damage claim." (Appellant's brief at 20).[10] It hopes to reduce the judgment by $10,000 if its Tucker Act claim is cognizable.[11]

The question before us, then, is whether the Tucker Act provides the jurisdictional basis for IAL to assert a counterclaim against the government in a forfeiture proceeding against IAL's property.

IAL cites cases in which plaintiffs used the Tucker Act to recover fines and penalties or the value of forfeited property, when the forfeiture or fine was illegal or unconstitutional. *Jaekel v. United States*, 304 F.Supp. 993 (S.D.N.Y.1969); *Compagnie General Transatlantique v. United States*, 21 F.2d 465 (S.D.N.Y.1927). The cited cases were original actions against the government by claimants of the property or the money paid. Although they support the proposition that the Tucker Act provides jurisdiction for such suits, *see also Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976), they do not dispose of the question whether such claims can be asserted as counterclaims in forfeiture proceedings.[12]

IAL alluded at oral argument to a second line of cases holding that claimants may sue under the Tucker Act for review of administrative decisions denying their applications for remission of forfeiture. *United States v. Sturgeon*, 529 F.2d 993 (8th Cir. 1976) (dictum); *Lowther v. United States*, 480 F.2d 1031 (10th Cir. 1973). *Accord Bramble v. Richardson*, 498 F.2d 968 (10th Cir. 1974). This court has acknowledged Tucker Act jurisdiction for such suits when the basis for the challenge is the unconstitutionality of the forfeiture, *Simons v. United States*, 497 F.2d 1046 (9th Cir. 1974), but again, they have arisen as original actions in district court. In those cases, claimants first sought and were denied administrative relief from the forfeiture.[13]

IAL does, however, cite two cases in which owners of property were allowed to assert Tucker Act claims against the government during forfeiture proceedings or actions to collect penalties.

In *United States v. Tanker Monsoon*, 433 F.2d 95 (1st Cir. 1970), the government filed a libel in admiralty against the Monsoon, erroneously charging it with responsibility for an oil spill. Given the choice of cleaning it up or letting the government do so and subjecting the plaintiff to fines, the vessel owner chose to incur the clean-up costs, then counterclaim for recovery. The court

10. The government argues that the judgment was for the entire $165,600 in fines. Consequently, if it is vacated and IAL is entitled to offset, IAL must offset its $10,000 claim against the entire $165,600, not against the $25,000 used to satisfy the judgment.

11. At oral argument, counsel for IAL conceded that this was not a case in which it could assert a counterclaim in setoff or recoupment without a separate jurisdictional ground. Such counterclaims, arising from the same transaction as the matter sued upon, are allowed when the government waives its sovereign immunity in suing a person. *United States v. Shaw*, 309 U.S. 495, 501, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967). Because this action is *in rem* against the aircraft, IAL cannot assert that, in bringing suit, the government waived immunity to claims by IAL.

12. IAL also relies upon dicta in *United States v. One (1) 1972 Wood, 19 Ft. Custom Boat, FL 8843AY*, 501 F.2d 1327 (5th Cir. 1974), and *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353 (5th Cir. 1972). Both cases suggested that the claimant's remedy was an original action under the Tucker Act.

13. This court allowed a Tucker Act claim in yet another procedural context in *Wiren v. Eide*, 542 F.2d 757 (9th Cir. 1976). Wiren was an indigent who was unable to post the bond required for remission of the pending forfeiture of his automobile. He sought a declaratory judgment on the constitutionality of the remission procedure, for a hearing on the merits of his claim that the forfeiture was unconstitutional, and for the return of the vehicle and damages. We held that the court had jurisdiction of the action under both the Tucker Act and § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976).

held that the expenses incurred were recoverable under the Tucker Act because they were equivalent to a fine or penalty. The government imposed them by statutory authority and, even though they were not paid directly to the government, they were expenditures the government would otherwise have had to make.

In *United States v. One 1965 Chevrolet Impala Convertible*, 475 F.2d 882 (6th Cir. 1973), the district court vacated its judgment of forfeiture and ordered that the claimant be paid the proceeds of the sale of his automobile and depreciation on it from time of seizure to time of sale. The court of appeals concluded that the district court had jurisdiction to vacate the judgment and refund the money under the Tucker Act.[14]

Neither case governs the result here. The First Circuit, which decided *Tanker Monsoon*, had long held that Tucker Act claims are assertable as counterclaims. *See United States v. Silverton*, 200 F.2d 824 (1st Cir. 1952).

The Sixth Circuit, which decided *One 1965 Chevrolet Impala Convertible*, also allows those sued by the government to counterclaim under the Tucker Act. *See United States v. P & D Coal Mining Co.*, 358 F.2d 619, 624 (6th Cir. 1966).

The question whether the Tucker Act authorizes the bringing of counterclaims at all is far from settled. *Compare Silverton with United States v. Nipissing Mines Co.*, 206 F. 431 (2d Cir. 1913), *pet. for cert. dismissed*, 234 U.S. 765, 34 S.Ct. 673, 58 L.Ed. 1582 (1914). *See also* 3 *Moore's Federal Practice* ¶ 13.29 (2d ed. 1978).

In this circuit, we have acknowledged the split of authority, *United States v. 40.60 Acres of Land, etc., California*, 483 F.2d 927, 928 n.1 (9th Cir. 1970), but have never squarely been faced with the question. *See United States v. 2,200 Paper Back Books*, 565 F.2d 566, 573 (9th Cir. 1977).[15] We decline to decide it in a forfeiture case such as this.

Here, IAL could have asserted the unconstitutionality of the seizure of its aircraft as an affirmative defense in the forfeiture proceeding. *United States v. Vertol H21C Reg. No. N8540*, 545 F.2d 648 (9th Cir. 1976). Had it done so and successfully established its defense, it could have recovered the entire $25,000 fund substituted for the aircraft. Instead, it attempted to interject a separate claim under the Tucker Act. We hold that dismissal of the counterclaim was appropriate, under this set of facts.

14. In *United States v. Bursey*, 515 F.2d 1228 (5th Cir. 1975), the Fifth Circuit upheld Tucker Act jurisdiction over a claim for illegal forfeiture of an appearance bond in a criminal case. The defendant posted the bond in a peyote possession case, then applied for leave to appear in forma pauperis. His conviction was reversed on appeal, but rather than return the $1,000 bond to defendant's parents as requested, the court remitted it to the government to cover costs of court appointed counsel.

Defendant appealed the bond forfeiture and his parents intervened, although they had not been parties in the criminal case. The court of appeals concluded that, because "a Tucker Act claim for affirmative relief against the government may proceed upon a counterclaim," 515 F.2d at 1234 (citing *United States v. Springfield*, 276 F.2d 798, 803–04 (5th Cir. 1960)), there was "no jurisdictional bar to allowing the Burseys to seek Tucker Act relief in the . . . proceeding on remand." 515 F.2d at 1235.

15. In *United States v. Articles of Food, Etc.*, 67 F.R.D. 419 (D.Idaho 1975), Judge Anderson held that the Tucker Act did not permit a counterclaim in a forfeiture proceeding under the Food, Drug and Cosmetic Act, 21 U.S.C. § 334, against 406 cases of allegedly mislabelled potato chips. It is unclear whether the government sought to collect fines or to condemn the articles. Claimant apparently sought return of its property, alleging that the government had agreed orally to allow it to use the remaining mislabelled items. Judge Anderson reviewed the controversy regarding Tucker Act counterclaims and reasoned:

The counterclaim does not arise out of any transaction or occurrence which is the basis for the government's action. It therefore cannot be said that the government has waived its immunity from defending against Clover Club's claim in any manner other than as is contemplated by the terms and conditions of its consent under 28 U.S.C. § 1346(a)(2), in an original proceeding.

67 F.R.D. at 424.

Our decision does not foreclose IAL from asserting its Tucker Act claim in an independent action in district court or the Court of Claims.

## THE FTCA

■ Because the trial court dismissed IAL's counterclaim as sounding in tort, IAL sought to amend its complaint to state a cause of action under the FTCA, 28 U.S.C. § 1346(b) (1976), by alleging that the seizure was negligently done. The government opposed the motion, citing two exceptions to the FTCA waiver of immunity: claims arising from the detention of goods and claims arising from the discretionary actions of government officials. The district court denied IAL's motion to amend, invoking both FTCA exceptions cited by the government.

We may affirm the district court if either exception applies to IAL's claim. We hold that the detention of goods exception bars the claim, and we need not discuss the application of the discretionary action exception.

The FTCA provides in pertinent part: [t]he district courts, . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . ., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1976).

The United States has not waived its immunity to tort liability arising from:

[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer.

28 U.S.C. § 2680(c) (1976).

The government cites cases from other circuits and from district courts in which the exception has been applied uniformly to prohibit suits for damages under the FTCA arising from negligent seizure or detention of goods by the government. *E. g., United States v. One (1) 1972 Wood, 19 Ft. Custom Boat, FL 8443AY*, 501 F.2d 1327 (5th Cir. 1974); *United States v. 1500 Cases, More or Less, Etc.*, 249 F.2d 382 (7th Cir. 1957); *S. Schonfeld Company, Inc. v. SS Akra Tenaron*, 363 F.Supp. 1220 (D.S.C.1973). *See also A-Mark, Inc v. United States*, No. 77–2152, slip op. at 3688 (9th Cir. Nov. 13, 1978).[16]

■ IAL responds that this is not an action involving customs or taxes and therefore the exception does not apply. Section 2680(c), however, does not apply solely to loss from detention of goods by tax or customs officers, but includes actions by "any other law enforcement officer."[17]

In *1500 Cases*, the government sued under the Food, Drug, and Cosmetic Act, 21 U.S.C. § 334(a) (1970), and in *S. Schonfeld*, the officer was an inspector for the Pure Food and Drug Administration. The seizure of IAL's aircraft by FAA officials appears to fall within the exception.

The trial court's denial of leave to amend IAL's complaint to state a claim under the FTCA is affirmed.

16. In the *A-Mark* majority opinion, this court distinguished injuries arising from the fact of detention from those arising from negligent handling of property while it is detained. Plaintiff entrusted a rare silver dollar to Treasury officials. While in their possession, the coin was severely damaged, greatly reducing its value. The trial court held that § 2680(c) barred a claim under the FTCA. We reversed, holding that the exception does not bar suits for negligent damage to property while detained by government officials.

Here, IAL requests damages consisting of lost rental revenues. It does not assert damage to its aircraft as a result of negligence by the FAA. Its claim arises from the *fact* of detention, and is barred by § 2680(c).

17. Judge Tang, concurring in *A-Mark*, argued for the narrow reading of the exception. Slip op. at 3689.