UNITED STATES of America, Plaintiff,

v.

AN ARTICLE OF DRUG ... NEOTER-RAMYCIN SOLUBLE POWDER CONCENTRATE, et al., Defendants.

Civ. A. No. CA–3–79–0615–D.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 14, 1981.

Paula Mastropiere-Billingsley, Asst. U. S. Atty., Dallas, Tex., for plaintiff.

Lee Simpson (Pfizer, Inc.), Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for defendants.

## ORDER

ROBERT M. HILL, District Judge.

Came on for consideration before the Court, Honorable Robert M. Hill, presiding, the motion to dismiss filed by Pfizer, Inc. (Pfizer), claimant. Having considered the motion, briefs of the parties, and oral argument the Court is of the opinion that the motion should be denied.

The plaintiff, the United States, initiated this *in rem* action by filing a complaint for forfeiture seeking seizure and condemnation of a specified quantity of the animal drug Neo-Terramycin Soluable Powder Concentrate (Neo-Terramycin) which had been shipped in interstate commerce by Pfizer. Pursuant to an order of the Court, the U.S. Marshal seized the specified drug. Pfizer filed a claim and answer. Following a trial from October 14, 1980, to October 23, 1980, a jury found that the product "is generally recognized" as safe and effective, contrary to the allegations of the United States.

On November 4, 1980, a Final Judgment was entered, which included an order that the seized drug be returned to the possession of Pfizer. The next day, November 5, 1980, the U.S. Marshal released the drug, in violation of the automatic 10-day stay provision of Fed.R.Civ.P. 62(a). The marshal's return shows that the marshal's office called Pfizer on November 5 to notify Pfizer that the drug had been released, and then mailed Pfizer a copy of the written order. The United States, however, was not notified of the release.

The United States filed a motion for a new trial on November 7, 1980. The government did not ever request or obtain an order from the Court to stay the execution of the Judgment releasing the *res* to Pfizer.[1] On May 8, 1981, the Court granted the government's motion for a new trial. A month later, on June 8, 1981, Pfizer renewed its motion to return the action to the Food and Drug Administration (FDA) on the ground that the drug is covered by the interim marketing provision of 21 C.F.R. § 558.15 (1981). The Court has not as yet

---

1. Pfizer admits that had the United States moved for or obtained a stay within the 10-day time period, it could not be argued that this action is moot. However, Pfizer contends that the government's failure to move for a stay rendered the early release of the drug by the U.S. Marshal irrelevant to the jurisdictional issue before the Court. At the hearing on Pfizer's motion to dismiss the government agreed that Pfizer is correct on this point.

ruled on this motion and has set forth a schedule that provides for simultaneous resolution of the motion to remand and a motion for summary judgment to be filed by the government.

On or about October 1, 1981, Pfizer removed the Neo-Terramycin from the district. Pfizer returned the drugs to the manufacturing plant beyond the territorial jurisdiction of this Court because the potency expiration date was to have been reached within four months. Pfizer's practice is to remove merchandise from its distribution warehouses approximately four months before the potency expiration date. The *res*, therefore, is no longer before the Court.

■ This action was instituted under the Federal Food, Drug and Cosmetic Act (the Act), 21 U.S.C. § 334, against a specifically identified lot of Neo-Terramycin. Section 334(b) provides, in part, that "the procedure in cases under this section shall conform as nearly as may be, to the procedure in admiralty." The general rule in admiralty is that in an *in rem* proceeding the res must be within the territorial jurisdiction of the court. *E.g. Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 640 F.2d 560, 566 (5th Cir. 1981) (Treasure Salvors III); *Platoro Ltd. v. Unidentified Remains of a Vessel,* 508 F.2d 1113, 1115 (5th Cir. 1975); *American Bank of Wage Claims v. Registry of District Court of Guam,* 431 F.2d 1215, 1218 (9th Cir. 1970). It is well established that the sale of the *res* does not destroy jurisdiction, so long as the court continues to exercise control over the proceeds of the sale. *Inland Credit Corp. v. M/T Bow Egret,* 552 F.2d 1148, 1151 (5th Cir. 1977); *American Bank, supra,* 431 F.2d at 1218. However, removal of the *res* from the court's jurisdiction, or distribution of a substitute *res* deposited in the registry of the court, has generally been held to destroy *in rem* jurisdiction. *Bank of New Orleans & Trust Co. v. Marine Credit Corp.,* 583 F.2d 1063, 1068 (8th Cir. 1978); *Inland Credit, supra,* 552 F.2d at 1151–52; *The Manuel Arnus,* 141 F.2d 585, 586 (5th Cir.), *cert. denied,* 323

U.S. 728, 65 S.Ct. 63, 89 L.Ed. 584 (1944); *The Kotkas,* 135 F.2d 917 (5th Cir. 1943); *Canal Steel Works, Inc. v. One Drag Line Dredge,* 48 F.2d 212, 213 (5th Cir.), *cert. denied,* 284 U.S. 647, 52 S.Ct. 29, 76 L.Ed. 550 (1931). Where the *res* is accidentally, fraudulently, or improperly removed from the district, the court's *in rem* jurisdiction is not affected. *The Rio Grande,* 90 U.S. (23 Wall) 458, 465, 23 L.Ed. 158 (1875); *Platoro, supra,* 508 F.2d at 1116.

The general rule that removal or destruction of the *res* destroys the *in rem* jurisdiction of the court has also been applied in seizure actions under the Act. *See United States v. 3 . . . Bags . . . Dried Mushrooms,* 157 F.2d 722 (7th Cir. 1946); *United States v. Washington Dehydrated Food Co.,* 151 F.2d 61 (9th Cir. 1945); *United States v. An Article of Device . . . "Porta Sauna",* No. 19,389 (6th Cir. 1969), Kleinfeld, Kaplan and Weitzman, Federal Food, Drug, and Cosmetic Act Judicial and Administrative Record 1969–1974 at 46 (Kleinfeld); *United States v. 260 . . . Nutri-Bio. . . Dietary Food Supplement,* No. 6919 (N.D.Ga.1962) [1963–1967 Transfer Binder] Food Drug Cos.L.Rep. (CCH) ¶ 40,023; *United States v. 261 Bags . . . Potatoes,* No. 16,385 (N.D.Ga. 1950), Kleinfeld, 1949–1950 at 166.

Pfizer argues that the general rule is applicable in this action. The Neo-Terramycin, the *res* involved, is no longer within the jurisdiction of this Court, and Pfizer contends that the case has become moot, resulting in the Court's losing *in rem* jurisdiction. It is further asserted that the rule requiring dismissal of cases that have become moot is more than a mere rule of decision; it is constitutionally mandated because there is no extant case or controversy. *See, e.g., Heitmuller v. Stokes,* 256 U.S. 359, 362, 41 S.Ct. 522, 523, 65 L.Ed. 990 (1921); *Dried Mushrooms, supra,* 157 F.2d at 723.

Despite the general rule that the presence of the *res* within the judicial district is a prerequisite to a court's jurisdiction, the Court is of the opinion that it has jurisdiction in this action. It now appears that the presence of the *res* within the judicial district is not an absolute prerequisite to a

court's jurisdiction. *See Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 569 F.2d 330, 334 (5th Cir. 1978) (Treasure Salvors I). Support for the proposition that the absence of the *res* is not a fundamental jurisdictional defect can be found in the numerous legal fictions that have been utilized to allow a court to decide an *in rem* case even though the *res* is not physically under the court's control. Jurisdiction has been sustained where the *res* is actually or constructively within the reach of the court. *United States v. Mack,* 295 U.S. 480, 55 S.Ct. 813, 79 L.Ed. 1559 (1935). Where the *res* has been taken from the jurisdiction of the court through accident, fraud, or improper removal, the court retains jurisdiction even though the *res* is no longer in the physical control of the court. *The Rio Grande, supra,* 90 U.S. 458, 23 L.Ed. 158. Similarly, it has long been the rule that proceeds from the sale of a vessel serve as an appropriate substitute for the *res. American Bank, supra,* 431 F.2d at 1218.

Ultimately, it must be recognized that the rule of admiralty requiring the presence of the *res* within the territorial confines of the court is predicated on the fiction· of convenience that a ship is a person against whom suits can be filed and judgment entered. *Treasure Salvors I,* 569 F.2d at 333–34. Personification of the ship allows actions to be brought against the vessel when the court lacks *in personam* jurisdiction. *Id.* at 334. The Fifth Circuit, however, has declined to myopically employ a legal fiction which exists solely to effectuate the adjudication of disputes when it is invoked for the opposite purpose. *Id.* This Court similarly declines to blindly follow a rule of law that has little relationship to the modern view of *in personam* jurisdiction.

█ The Court is of the view that where *in personam* jurisdiction has been established over the claimants in a drug seizure action, at least where the *res* was initially within the jurisdiction of the court when *in personam* jurisdiction was asserted, the subsequent release of the *res* does not affect the court's jurisdiction to resolve the action.

As the courts have recognized, actions such as this, commenced by seizures under the Act, are not true *in rem* actions. *United States v. An Article . . . Sudden Change,* 288 F.Supp. 29, 31 (E.D.N.Y.1968), *rev'd on other grounds,* 409 F.2d 734 (2d Cir. 1969). The applicability of § 334(b) requiring the procedure in seizure cases to conform to the procedure in admiralty has been held applicable only to the initial seizure; once the seizure was complete the action is characterized as one at law. *Id. See also Four Hundred and Forty-Three Cans of Frozen Egg Product v. United States,* 226 U.S. 172, 183, 33 S.Ct. 50, 52, 57 L.Ed. 174 (1912). In 1966, Rule 1 of the Federal Rules of Civil Procedure was amended to "abolish the distinction between civil actions and suits in Admiralty." Advisory Committee on Admiralty Rules of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States.

In *Inland Credit, supra,* the plaintiff, Inland, had filed a suit both *in rem* against a ship and *in personam* against the ship owner. After a court ordered sale of the *res,* both the proceeds of that sale and certain other funds recovered from the owner of the vessel were distributed pursuant to court order. Inland and two other creditors appealed the manner of distribution of the funds. Most of the proceeds of the sale had been distributed to Inland. The creditors sought a greater share of the proceeds of the sale of the *res,* while Inland sought a greater share of the *in personam* recovery. Inland attempted to foreclose the appeals of the other creditors on the basis that the distribution of the proceeds of the sale of the *res* destroyed any jurisdiction to appeal the propriety of that distribution.

Despite the acknowledged existence of the "strict rule" that removal of the *res* destroys a court's jurisdictional base, the Fifth Circuit in *Inland* held that the court could properly exercise its jurisdiction *in personam* to correct any errors in the lower court's *in rem* adjudication. *Inland,* 552 F.2d at 1151–52. The court noted that it had *in personam* jurisdiction over Inland since it had voluntarily sought a greater

part of the *in personam* recovery, *id.* at 1152, and held that it had both the power and duty to restore to a litigant what he has lost by an erroneous judgment, so long as the subject of the controversy and the parties are before the court. *Id.* at 1151. In reaching this conclusion, it was stated:

> We recognize, to be sure, that a strict construction of the limits of *in rem* actions might bar any appeal of an *in rem* action unless supported by continued *in rem* jurisdiction. This narrow view of our jurisdiction, however, is difficult to square with the modern view, now almost a cliché, that *in personam* jurisdiction can be asserted whenever the defendant has those minimum contacts with the forum state that will satisfy " 'traditional notions of fair play and substantial justice.' " We need not decide in the present case whether the philosophical underpinnings of the system of *in rem* jurisdiction in admiralty have been critically shaken. We do decide, however, that where, as here, we find ourselves at the interface of *in rem* and *in personam* jurisdiction, we can properly exercise a broad *in personam* power.

*Id.* (citations omitted).

This same theme of emphasizing the exercise of *in personam* jurisdiction over the limitations of *in rem* jurisdiction is echoed in *Treasure Salvors I*, 569 F.2d 330. In *Treasure Salvors I*, plaintiffs sued for possession and confirmation of title to a wrecked Spanish galleon. The United States intervened in plaintiffs' *in rem* action as a party defendant and filed a counterclaim asserting a property right in the *res*. Plaintiffs had recovered a significant amount of gold, silver, artifacts and armament from the wreck, and much of this was in the trial court's territorial jurisdiction. The government, however, contended that the court lacked *in rem* jurisdiction to determine the rights of the parties to the bulk of the wreck that remained on the ocean floor, beyond the territorial jurisdiction of the court. The Fifth Circuit held that since the trial court had *in personam* jurisdiction over the claimants, the "arrest" of the vessel was not essential to the resolution of the

action. *Id.* at 335. The government, by intervening and stipulating to the court's admiralty jurisdiction, had waived the usual requirement that the *res* be present within the territorial jurisdiction of the court and consented to the court's jurisdiction to determine its interest in the extraterritorial portion of the vessel. *Id.; cf. Sudden Change*, 288 F.Supp. at 32 (Although a judgment of condemnation was sought, since both parties had appeared, the action was essentially one for a declaratory judgment to define Sudden Change as a drug; jurisdiction was therefore proper even though the *res* was not within the territorial jurisdiction of the court).

In the case at bar, the parties are before the Court. Pfizer, as claimant, has consented to the Court's exercise of *in personam* jurisdiction. *See United States v. Article of Drug Designated B–Complex Cholinos Capsules*, 362 F.2d 923, 926–27 (3d Cir. 1966). In addition, Pfizer invoked the jurisdiction of the Court after the *res* had left the territorial jurisdiction of the Court when it reurged its motion to return this action to the FDA. The Court is of the opinion that Pfizer is subject to the Court's *in personam* jurisdiction. *See Inland*, 552 F.2d at 1152.

Further, the controversy remains before the Court. Pfizer contends that the subject of the controversy is limited to the *res*, since the only relief asked for in the "Complaint for Forfeiture" is forfeiture and destruction of the *res*. Therefore, Pfizer concludes that since the *res* is not before the Court and no *in personam* relief is requested or can be granted, this action is moot and must be dismissed. This argument, however, ignores substantive policies behind the Act.

The basic issue involved in this action is whether Neo-Terramycin, as labeled, is a "new animal drug" within the meaning of 21 U.S.C. § 321(w). Pfizer states that a number of obsolete indications on the label are being eliminated. The government, however, contends that inadequate testing has been done to support any of the label

claims; thus, the fact that the label claims may be narrowed is irrelevant. Pfizer has stipulated that copies of the labeling that were filed and entered into evidence in this action are true copies of the labeling. The fiction of bringing suit against the Neo-Terramycin was invoked simply to get the issues and parties before the Court and this purpose was accomplished. *See Treasure Salvos I*, 569 F.2d at 334.

Should the Court hold that the presence of the *res* is a jurisdictional prerequisite, the principle that "the character of the remedy sought should be determinative" in delineating the boundary between *in personam* and *in rem* actions would be disregarded. 1 Moore, *Federal Practice* ¶ 0.142[2.–1] at 1362; *Sudden Change*, 288 F.Supp. at 32. The character of the remedy sought is not forfeiture and destruction of a specific lot of Neo-Terramycin, but a declaration that Neo-Terramycin is a new animal drug. The effect of this finding would be *res judicata* against Pfizer in a subsequent injunction action, *United States v. Nysco Laboratories Inc.*, 318 F.2d 817, 817–18 (2d Cir. 1963) (per curiam), as well as being *res judicata* in a subsequent seizure. *United States v. 4 Cans . . . Master Liquid*, 127 F.Supp. 243, 246 (N.D.Ia.1955). Conversely, a judgment in this case for Pfizer would be *res judicata* against the government. *United States v. One Dozen Bottles . . . Boncquet Tablets*, 146 F.2d 361, 363 (4th Cir. 1944). Since the controversy and parties are still before the Court, the action is not moot and need not be dismissed.

As an alternative ground for sustaining jurisdiction in this action, admiralty *in rem* jurisdiction requires only that the *res* be present in the district when the suit is filed or during the pendency of the action. *State of Florida, Department of State v. Treasure Salvors, Inc.*, 621 F.2d 1340, 1346 (5th Cir. 1980) (Treasure Salvors, II), *cert. granted*, 451 U.S. 982, 101 S.Ct. 2312, 68 L.Ed.2d 838 (1981); *Platora Ltd*, 508 F.2d at 1115. The Neo-Terramycin was present in this district when this action was filed in 1979, and has only recently been removed from the district. Since the *res* was present when the action was filed, the Court is of the opinion that *in rem* jurisdiction is established.

As a final ground for dismissal, Pfizer argues that the Neo-Terramycin has so deteriorated that it has been effectively destroyed so that the action is moot because there is no *res*. *261 Bags of Potatoes, supra*. *See also Washington Dehydrated Food Co.*, 151 F.2d at 61. The Court is of the opinion that *in rem* jurisdiction is not destroyed by a loss of potency of the *res*. Many drugs have a limited period in which they remain potent. This natural deterioration of the *res* over time would seem to clearly fall under the exception to the mootness doctrine that jurisdiction can be sustained in cases capable of repetition yet evading judicial review. *See Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); *Liner v. Jafco, Inc.*, 375 U.S. 301, 305–09, 84 S.Ct. 391, 394–396, 11 L.Ed.2d 347 (1964); *United States v. W. T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Pfizer has continued to distribute Neo-Terramycin in interstate commerce, and while it claims it will change some of the labeling, it plans to continue to make claims which the government considers unsupportable. The issues in this action are capable of repetition, and because of the *res judicata* effect, a judgment will have future effect in that it will resolve with finality the dispute between the parties.

For the foregoing reasons, the Court is of the opinion that this action is not mooted by the removal of the *res* by Pfizer. Pfizer's motion to dismiss should be denied.

It is so ORDERED.