**In the Matter of the Application of David WILLIAMS and Michael Arnold for an order directing the release of $53,040 in U.S. Currency or in the alternative, directing that forfeiture proceedings be instituted.**

No. CV–85–3219.

United States District Court,
E.D. New York.

Feb. 19, 1986.

Irving Cohen, New York City, for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. by Kevan Cleary, for U.S.

WEINSTEIN, Chief Judge:

David Williams and Michael Arnold bring this petition to compel the release of $53,-040 seized at LaGuardia Airport. The United States had not instituted a forfeiture proceeding because, in its view, petitioners failed to comply with the bond requirements established by the Drug Enforcement Administration. The govern-

ment now moves to dismiss the petition on the ground that this court lacks subject matter jurisdiction.

FACTS

David Williams was stopped by DEA agents on April 1, 1985, while waiting to board a flight from LaGuardia Airport in New York to Miami. The parties dispute the reason for the stop. Williams contends that the stop was unauthorized. The government's position is that Williams was detained on a marijuana charge even though, according to Williams, the agents did not mention marijuana until hours after the stop and a search of Williams' luggage.

The DEA agents arrested Williams. A search of his luggage revealed $53,040 in cash. It was seized. In the ensuing weeks Williams' and Arnold's attorney attempted to have the DEA commence forfeiture proceedings. On May 22, the DEA informed Williams' and Arnold's attorney that his clients would have to file a claim, together with either a 10% cost bond of $5,304 or an *in forma pauperis* petition. On June 19, the DEA received a notice of claim from David Williams as owner of $15,040 and Michael Arnold as owner of the balance, $38,000, with pauper's affidavits from both men.

The affidavits reflected modest assets. Williams claimed a salary of $1000 per month, $900 in a bank account, and a house valued at $14,800 on which he owed $11,000 in taxes. Arnold claimed $300 per week in salary, $14,440 a year in rent payments, $3400 in a bank account, and a $90,000 house, approximately two-thirds owned free and clear. Both men claimed four dependents each.

Five weeks after receiving the claim, the DEA rejected the paupers' affidavits as lacking in merit. Shortly thereafter, Williams and Arnold sued to obtain the release of the $53,040.

LAW

The Drug Enforcement Administration may seize money that is "furnished or intended to be furnished by any person in exchange for a controlled substance...."

21 U.S.C. § 881(a)(6). Process is governed by United States Customs Service laws. 21 U.S.C. § 881(d).

When it seizes property valued at $100,000 or less, the DEA must publish, for at least three weeks, notice of the seizure and its intention to have the property forfeited. 19 U.S.C. § 1607. Within 20 days of the first publication of the notice, a person claiming an interest in the property must file a notice of claim and a bond of $2500 or ten percent of the claimed property, whichever is less:

> Any person claiming such [property] may at any time within twenty days from the date of the first publication of the notice of seizure file with the appropriate customs officer a claim stating his interest therein. Upon the filing of such claim, and the giving of a bond to the United States in the penal sum of $2,500 or 10 percent of the value of the claimed property, whichever is lower, but not less than $250, with sureties to be approved by such customs office ... such customs officer shall transmit such claim and bond ... to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law.

19 U.S.C. § 1608.

DEA regulations concerning claimed property do not provide for *in forma pauperis* petitions. 21 C.F.R. 1316.71–1316.81. The Customs Service regulations control. 21 U.S.C. § 881(d). "Upon satisfactory proof of financial inability to post the bond, the district director shall waive the bond requirement for any person who claims an interest in the seized property." 19 C.F.R. 162.47(e).

As a result of the combination of statutes and regulations, if a bond or a pauper's affidavit, together with a notice of claim is presented to the DEA agency, formal condemnation proceedings must be commenced by the government. 19 U.S.C. § 1608. Due process then requires a determination of the ownership of seized property within a reasonable period of time after

the seizure. *See United States v. Von Neumann*, — U.S. —, —, 106 S.Ct. 610, 613, 88 L.Ed.2d 587 (1986); *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

The network of statutes and regulations governing the handling and disposition of seized property exist to protect the constitutional right not to be deprived of property without due process of law. *In forma pauperis* provisions are thus constitutionally mandated for the indigent. *See Wiren v. Eide*, 542 F.2d 757, 763 (9th Cir.1976) (forfeiture laws must not be enforced so as to create "a profitable or self-supporting operation by denying the fifth amendment rights of the poor").

*In forma pauperis* claims raise practical as well as constitutional issues. The forfeiture situation is one of inherent tension, with an individual's rights temporarily suspended. Action favors the person claiming rights to seized property; inaction the government, which has the property. *Cf. United States v. United States Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

The government's argument is essentially that an *in forma pauperis* petition must be meritorious in the eyes of the DEA. Petitioners maintain that a pauper's affidavit alone complies with the bond requirement, even if the DEA concludes that the affidavit lacks merit, for to allow any discretion to the agency would unite the functions of adversary and arbiter.

An appropriate balance requires a reasonable or good faith claim of indigency. Where there is a doubt, the claimant must be afforded the right to have the court determine good faith. 5 U.S.C. §§ 705–706.

The DEA does not warn a claimant of adverse consequences if the affidavit is deemed not meritorious. It does not give notice that compliance with the technical requirements must satisfy the agency director as to its overall merit and honesty. Should the DEA reject a pauper's affidavit that is not facially unreasonable, procedural fairness dictates that it must allow petitioners to subsequently file the bond.

## APPLICATION OF LAW TO THE FACTS

Both parties are content to rely on their submission of a written record. No hearing is required.

Williams' and Arnold's affidavits, taken at face value, demonstrate a borderline economic station. Arnold might have been able to afford a pro rata share of the bond. Williams probably could not. It should be noted that the DEA misinformed petitioners as to the amount of the bond: The sum mentioned was $5,304, or ten percent of the amount seized, rather than the statutory maximum of $2,500. It was not unreasonable for Williams and Arnold to believe that a bond was beyond their means.

## CONCLUSION

Williams and Arnold, now apprised of the correct amount needed, shall post the $2500 bond within ten days or waive their right to a forfeiture proceeding.

Upon timely posting, the government shall promptly commence a forfeiture proceeding or return the cash to the person from whom it was seized.

SO ORDERED.