Monte STERLING, Plaintiff,

v.

UNITED STATES of America, Drug Enforcement Administration of the United States of America, and Special Agent Richard Shields and Other Unknown Agents of D.E.A., Defendants.

No. CV–88–3825 (ADS).

United States District Court,
E.D. New York.

Oct. 12, 1990.

Robert C. Dorf, New York City, for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. by Varuni Nelson, Asst. U.S. Atty., for defendants.

## ORDER

SPATT, District Judge.

This matter was referred to United States Magistrate (now United States District Judge) Carol Bagley Amon pursuant to 28 U.S.C. § 636 and Rule 1 of the Magistrate's Rules for the Eastern District of New York, to prepare a Report and Recommendation on the defendants' motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or in the alternative, for summary judgment pursuant to Fed.R. Civ.P. 56(c), and on the plaintiff's cross-motion to strike defenses pursuant to Fed.R. Civ.P. 12(f). On August 8, 1990, Magistrate Amon rendered her Report, recommending that: (1) the defendant Drug Enforcement Administration's motion to dismiss for lack of subject matter jurisdiction

be granted; (2) summary judgment be granted in favor of the defendant United States of America; and, (3) the plaintiff's cross-motion to strike be granted in part and denied in part. Thereafter, by letter dated August 15, 1990, the plaintiff timely filed objections to the Report and Recommendation.

The Court having fully considered the Report and Recommendation, the objections filed thereto, and undertaken a *de novo* review of the matter (*see* 28 U.S.C. § 636[b][1]; *Grassia v. Scully*, 892 F.2d 16, 19 [2d Cir.1989]), it is hereby,

ORDERED, that the Report and Recommendation is confirmed and adopted by this Court in all respects.

SO ORDERED.

## REPORT AND RECOMMENDATION TO JUDGE SPATT

August 8, 1990.

CAROL BAGLEY AMON, United States Magistrate.

### INTRODUCTION

Plaintiff brings this action against the United States of America, the Drug Enforcement Administration (DEA), and Agents of the DEA to recover moneys seized from him alleging as jurisdictional predicates 28 U.S.C. § 1331, 28 U.S.C. § 1346, 28 U.S.C. § 1582, 28 U.S.C. § 2680, 19 U.S.C. § 1582, the Administrative Procedures Act, 5 U.S.C. § 702, 42 U.S.C. § 1983, and the Fourth and Fifth Amendments to the Constitution of the United States.

Defendants United States of America and the DEA have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or, in the alternative, summary judgment pursuant to Fed.R.Civ.P. 56(c) "for lack of personal and subject matter jurisdiction." Plaintiff has cross-moved pursuant to Fed.R.Civ.P. 12(f) for an order striking the first, second, third, fourth, and eighth defenses of the United States and DEA.[1]

---

1. Defendant also cross-moved for an order di-
recting the government to serve the summons

This case was referred to me by the Honorable Joseph M. McLaughlin[2] for a Report and Recommendation on these motions. For the reasons set forth herein, it is respectfully recommended that the motion of Defendant Drug Enforcement Administration to dismiss for lack of jurisdiction be granted. In addition, it is recommended that the complaint against Defendant United States be dismissed pursuant to Fed.R.Civ.P. 56. It is further recommended that plaintiff's cross-motion to strike be granted-in-part and denied-in-part.

## BACKGROUND

### I. *Facts*

On February 11, 1987, DEA agents seized $26,400 from plaintiff at LaGuardia Airport in Queens, New York pursuant to 21 U.S.C. § 881(a)(6). (Sterling Aff't ¶¶ 3, 5; Exh. A to Nelson Aff't).

Although the facts surrounding the seizure are in dispute, the contested events are not material to a resolution of the government's motion.

According to the DEA report of the incident, plaintiff was questioned upon arrival at LaGuardia Airport from Atlanta, Georgia. He admitted to carrying a large amount of currency and consented to a search of his garment bag which uncovered the moneys in his clothing and shoes. Also found on his person were documents described as drug records bearing the notations "clips and bullets", "M gun," and "for each bye for guns." (Exh. A to Sterling Aff't). The currency was seized and plaintiff was given a receipt. (Exh. A to Nelson Aff't). The following day, a dog trained to detect the presence of narcotics gave a positive alert to the money. (Exh. A to Sterling Aff't). Plaintiff denies freely consenting to a search of his belongings stating that he was told by the agents if he refused permission they would arrest him.

(Sterling Aff't ¶ 4). He contends that he told the agents the money was from lawful sources and denies possessing any drug records. (Sterling Aff't ¶ 5). Plaintiff was not prosecuted in connection with this seizure. (Sterling Aff't ¶ 6).

It is undisputed that subsequent to the seizure, DEA sent plaintiff a Notice of Seizure,[3] which plaintiff received and signed for on March 25, 1987. (Exh. C to Nelson Aff't; Sterling Aff't ¶ 11). This notice apprised plaintiff, *inter alia*, that DEA had commenced administrative forfeiture proceedings and of the procedures to be followed to challenge the seizure either at the administrative level or in court. Specifically, plaintiff was notified that he had thirty days from the receipt of the notice to seek pardon or mitigation of forfeiture with DEA's Asset Forfeiture Unit. Plaintiff was further advised that as an alternative course, he could contest the forfeiture in United States District Court by filing a claim of ownership and either a bond or an *in forma pauperis* declaration with DEA within twenty days of the first date of publication of the notice of seizure in the Wednesday edition of USA Today. The notice also included citations to the relevant provisions of the United States Code and the Code of Federal Regulations. (Exh. B to Nelson Aff't). On April 8, 1987, notice of the forfeiture was published in USA Today. (Exh. D to Nelson Aff't).

It is undisputed that plaintiff neither sought administrative mitigation of the forfeiture nor filed a claim and bond with DEA to initiate a court action within the specified time periods. There being no action taken by the plaintiff to contest the seizure, on June 11, 1987 DEA's Asset Forfeiture Unit issued a Declaration of Forfeiture of the $26,400, which announced that the currency had been forfeited to the United States. (Exh. E to Nelson Aff't).

and complaint on Defendant Richard Shields, who participated in the seizure of the currency. On July 27, 1989, I ordered the government to direct the U.S. Marshal to serve Shields with the summons and complaint. (Order dated July 27, 1989). On October 30, 1989, Defendant Shields filed his answer to the complaint.

2. This case was subsequently assigned to the Honorable Arthur D. Spatt.

3. A copy of the notice is attached to this Report and Recommendation.

Over six months later, on January 25, 1988, plaintiff sent a letter to the United States Court of International Trade requesting information concerning the return of the seized money. (Exh. F to Nelson Aff't). DEA's Forfeiture Counsel answered this letter on June 13, 1988 and advised plaintiff that since DEA had not received a response from him as of June 11, 1987, the money was forfeited and the filed closed. (Exh. G to Nelson Aff't). On October 27, 1988, Robert Dorf, plaintiff's attorney, sent a "Notice of Claim" to DEA's Asset Forfeiture Unit demanding immediate return of the money. (Exh. H to Nelson Aff't). DEA's Forfeiture Counsel responded to this notice stating that it was being returned because it was both untimely and defective. The claimed defects were the failure of plaintiff to sign the notice and post a bond. (Exh. I to Nelson Aff't).

On December 9, 1988, the instant action was commenced. In his complaint, plaintiff alleges that the United States has refused to return to him money that was unlawfully seized from him by agents of DEA without probable cause and in violation of his civil and constitutional rights. He contends that at no time did DEA or any other agency commence a forfeiture action in any court of the United States and that the moneys were unlawfully seized and converted. Plaintiff seeks judgment in the exact amount of the moneys seized.

## II. *The Statutory Provisions Governing Forfeiture*

In order to fully address the parties' contentions, it is necessary to summarize the statutes and regulations governing administrative and judicial forfeiture.

Section 881(a)(6) subjects to forfeiture "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C.

§ 881(a)(6). Where $100,000 or less has been seized pursuant to 21 U.S.C. § 881(a)(6), the currency is subject to the summary forfeiture provisions of 19 U.S.C. § 1607. *See* 21 U.S.C. § 881(d); 19 U.S.C. § 1607. In such a case, DEA is required to publish a notice of seizure and its intention to have the property forfeited. 19 U.S.C. § 1607; 21 C.F.R. § 1316.75; *see also Application of Williams*, 628 F.Supp. 171, 172 (E.D.N.Y.1986). In addition, DEA must give written notice of the seizure together with information on the applicable procedures to any party that appears to have an interest in the seized currency. 19 U.S.C. § 1607. Within 20 days of first publication, a person claiming an interest in the currency must file a claim and a bond of $5,000 or ten percent of the value of the claimed property (whichever is less, but in no event less than $250) if he wishes the matter to be heard in the district court. 19 U.S.C. § 1608; 21 C.F.R. § 1316.75–76. Failure to timely file the notice of claim and bond[4] results in forfeiture of the currency. 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77. The petitioner may also seek remission or mitigation of the forfeiture from DEA. Petitions for remission or mitigation of forfeiture must be addressed to DEA's Asset Forfeiture Unit or Special Agent–in–Charge of DEA and executed and sworn to by the person alleging the interest in the property. 19 U.S.C. § 1618; 21 C.F.R. § 1316.79–80.

## DISCUSSION

### I. *The Government's Motion to Dismiss*

#### A. The Parties' Contentions

The government contends that plaintiff's claims must be dismissed as against the Drug Enforcement Administration for lack of personal jurisdiction and as against the United States for lack of subject matter jurisdiction. (Defendants' Brief at 2).

■ The plaintiff concedes that DEA is improperly named.[5] He maintains, how-

---

4. In lieu of a bond, the petitioner may file an *in forma pauperis* petition, which may relieve the

petitioner from the bond requirement. *See Application of Williams*, 628 F.Supp. at 172.

5. As the government correctly argues, Congress

ever, that the court has jurisdiction over the United States under the Administrative Procedures Act (APA), 5 U.S.C. § 702, in conjunction with the general federal question statute, 28 U.S.C. § 1331, or pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), depending upon how the court construes the relief sought in the complaint. Plaintiff contends as an initial matter that since he is seeking the exact amount of money seized he is requesting specific equitable relief properly brought under the APA. Plaintiff argues in the alternative that if his complaint is construed to seek money damages, concededly not available under the APA, the court has jurisdiction under the FTCA.

Plaintiff raises two claims under the APA and Section 1331: (1) that DEA exceeded its authority in administratively forfeiting his funds because 19 U.S.C. § 1607 does not include "money" within its provisions for administrative forfeiture; and (2) that the administrative forfeiture was a nullity because he received constitutionally defective notice of the impending forfeiture in that the notice he received failed to include a copy of the applicable regulations and the telephone number of someone who could explain the procedures. (Plaintiff's Brief at 4–7).[6]

Under the FTCA, plaintiff asserts that the agents committed the state law tort of conversion when they seized his money without justification.

In response, the government argues that neither the APA nor the FTCA provides a basis for jurisdiction over plaintiff's claims. Specifically, the government maintains that sovereign immunity is not waived under the APA in this case for the following distinct reasons: (a) the complaint seeks money damages not cognizable under the APA, (b) the plaintiff has an adequate remedy in another court; namely, the United States Court of Claims, (c) the decision to forfeit funds of $100,000 or less is one "committed to agency discretion", and (d) the forfeiture statute forbids the relief sought. (Defendants' Brief at 13–14; Defendants' Reply Brief at 12–18).

The government maintains that immunity is not waived pursuant to the FTCA since DEA's seizure falls within the exception to the FTCA set forth in 28 U.S.C. § 2680(c), which provides that the FTCA is inapplicable to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c).

In support of his motion to strike, plaintiff asserts, and the government does not dispute, that he has stated a cause of action against the agents individually under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), based on his claim that the agents seized his money without probable cause to believe it was related to the exchange of a controlled substance in violation of both the statutory requirement in 21 U.S.C. § 881(a)(6) and the Fourth Amendment to the Constitution.[7]

### B. The Administrative Procedures Act

#### 1. *Waiver of Sovereign Immunity*

The principles of sovereign immunity are well-settled. The United States, as sovereign, cannot be sued without its consent. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

---

must authorize suits against its agencies. *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952). Since Congress has not chosen to authorize suits against DEA, the claims against DEA must be dismissed. *Ricca v. United States*, 488 F.Supp. 1317, 1325 (E.D.N.Y. 1980).

**6.** Plaintiff's complaint does not articulate this claim with any specificity, but it arguably derives from the general allegation that his money was seized "in violation of [his] Civil Rights and

Constitutional rights." (*See* Complaint at ¶¶ 9–10).

**7.** At oral argument, plaintiff conceded, as the government had claimed, that there is no jurisdictional basis for a lawsuit against the United States based on *Bivens*. *Bivens* authorizes suits against the federal official responsible for the tort complained of and not against the government itself. *Keene Corp. v. United States*, 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

The terms of the consent define the court's jurisdiction to entertain the suit. *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). A waiver of immunity will not be implied but must be "unequivocally expressed". *Id.* at 161, 101 S.Ct. at 2701.

The APA provides for a limited waiver of sovereign immunity in an action seeking review of administrative agency action. Section 702 of Title 5 provides that:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

This waiver of sovereign immunity is limited by the provisions of Sections 701 and 704 of Title 5. Section 701 provides that the APA does not apply where other statutes preclude judicial review, 5 U.S.C. § 701(a)(1), or where the contested agency action is one committed by law to agency discretion. 5 U.S.C. § 701(a)(2). Section 704 further bars review if there is an adequate remedy in another court. 5 U.S.C. § 704.

### a. Money Damages

■ The government contends that the APA does not waive sovereign immunity in this case because plaintiff seeks monetary relief. The APA by its terms does not apply where the relief sought is money damages. 5 U.S.C. § 702. In *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct.

2722, 101 L.Ed.2d 749 (1988), the Supreme Court noted, however, that Section 702's prohibition on claims for money damages does not extend to all situations where the claim could ultimately result in the payment of money by the federal government. 487 U.S. at 893, 108 S.Ct. at 2731. Specifically, the Court concluded that "an equitable action for specific relief ... may include an order providing for 'the recovery of specific property *or monies* ...'". *Id.* (quoting *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)) (emphasis added by the Court). The term "money damages," according to the court, does not mean all forms of monetary relief, *id.* 487 U.S. at 896, 108 S.Ct. at 2733, but rather compensatory relief or a substitute for a suffered loss. Specific remedies, on the other hand, "are not substitute remedies at all, but attempts to give the plaintiff the very thing to which he was entitled." *Id.* at 895, 108 S.Ct. at 2732 (quoting D. Dobbs, *Handbook on the Law of Remedies* 135 (1973) as quoted in *Maryland Dep't of Human Resources v. Dep't of Health and Human Serv.*, 763 F.2d 1441, 1446 (D.C. Cir.1985)).

The complaint in this case seeks monetary damages, but in the exact amount seized from plaintiff and accordingly can be construed as requesting a specific equitable remedy; namely, the return of the moneys taken. *See Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1099–100 (9th Cir.1990) (claim seeking return of property forfeited pursuant to 21 U.S.C. § 881 cognizable under APA); *Willis v. United States*, 787 F.2d 1089, 1092 (7th Cir.1986) (same).[8] Consequently, the government's contention that the relief sought by plaintiff defeats jurisdiction under the APA is without merit.

### b. Adequate Remedy

■ The APA precludes judicial review of a final agency action under its provisions

8. Although both *Marshall Leasing* and *Willis* were concerned with the seizure and forfeiture of automobiles rather than money, it would be an anomalous result to hold that the type of property seized—that is, money instead of an automobile—dictates whether or not plaintiff's claim is cognizable under the APA. Rather, the

relevant inquiry under Section 702 is the nature of the relief sought, rather than the form the relief ultimately takes. *See Bowen*, 487 U.S. at 891–901, 108 S.Ct. at 2731–2736; *Maryland Dep't of Human Resources*, 763 F.2d at 1446–48; *Esch v. Yeutter*, 876 F.2d 976, 981–82 (D.C.Cir.1989).

if there is another court available which provides an adequate remedy to redress the alleged grievance. 5 U.S.C. § 704. Accordingly, if the claim raised can be adequately addressed in the Court of Claims, Section 704 precludes reliance on the APA. *Estate of Watson v. Blumenthal,* 586 F.2d 925, 934 (2d Cir.1978).

The government's contention that plaintiff's constitutional claim can be raised in the United States Claims Court is not persuasive.

The Court of Claims' jurisdiction is defined by the Tucker Act, which provides in part:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act itself provides only for a waiver of sovereign immunity. *LaChance v. United States,* 15 Cl.Ct. 127, 129 (1988). For the Court of Claims to have jurisdiction, there must be a basis for the creation of a substantive right enforceable against the United States for money damages. *Id.* Since the Due Process Clause of the Fifth Amendment does not mandate the payment of money damages, the Court of Claims is without jurisdiction to hear a claim premised upon constitutionally deficient notice. *Shaw v. United States,* 8 Cl.Ct. 796, 800 (1985); *see also LaChance,* 15 Cl.Ct. at 130; *Torres v. United States,* 15 Cl.Ct. 212, 215 (1988). Accordingly, since plaintiff does not have an adequate remedy in Claims Court, Section 704 is not a bar to the APA's waiver of sovereign immunity. *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1100–01 (9th Cir.1990).

### c. Agency Discretion

■ The government further argues that denials of petitions for remission of forfeiture are matters committed to agency discretion, which are not subject to judicial review under the APA. *See* 5 U.S.C. § 701(a)(2); *LaChance v. Drug Enforcement Administration,* 672 F.Supp. 76, 79 (E.D.N.Y.1987). The government's argument is misplaced. It is not the exercise of the agency's discretion that is being challenged here, but rather the adequacy of the notice of the proceeding itself and the authority of the agency to take action in the first instance. *See Marshall Leasing, Inc. v. United States,* 893 F.2d at 1102–03; *Willis v. United States,* 787 F.2d 1089, 1092–93 (7th Cir.1986); *Application of Williams,* 628 F.Supp. at 172. Accordingly, review is not foreclosed on this ground.

### d. Forfeiture Statute Precludes Relief

Finally, the government contends that the forfeiture provisions forbid the relief sought here and hence sovereign immunity under the APA is not waived under Section 701. The government observes that the statutory provisions would be rendered meaningless if the time limits for filing a claim and bond could be circumvented by filing a suit under the APA. Although this contention may have substantial merit as to most challenges to forfeiture, the forfeiture provisions cannot be read to bar resort to the court under the APA where the plaintiff's claim is that constitutionally deficient notice prevented him in the first instance from meeting those deadlines. *Jaekel v. United States,* 304 F.Supp. 993, 998 (S.D.N.Y.1969) (failure to resort to forfeiture proceedings does not deprive a court of jurisdiction to hear a claim that notice of those proceedings was constitutionally inadequate); *see also Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (for purposes of the APA, Congressional intent to preclude review of constitutional claims must be clear because, in part, of "the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim").

### 2. *Substantive Basis for Jurisdiction*

The finding here that the APA waives sovereign immunity does not end the in-

quiry. The APA is not an independent source of subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 104–06, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977). The question remains whether there is a substantive jurisdictional basis for plaintiff's claims that he was deprived of his property without due process because DEA (1) exceeded its statutory authority in forfeiting the money without initiating a forfeiture proceeding in court and (2) failed to provide him with adequate notice of the impending forfeiture.

Where sovereign immunity has been waived by the APA a proper claim brought under 28 U.S.C. § 1331, the statute on which plaintiff relies, provides a substantive basis for jurisdiction against the United States. *See, e.g., Sprecher v. Graber*, 716 F.2d 968, 973–74 (2d Cir.1983).

Assuming without deciding that plaintiff raises a federal question for jurisdictional purposes under 28 U.S.C. § 1331 in asserting that DEA was without authority to forfeit moneys administratively, I conclude that the government's motion to dismiss this claim should be granted on the merits.

Section 1607 of Title 19 of the United States Code provides in part that where the value of a "seized vessel, vehicle, aircraft, merchandise, or baggage does not exceed $100,000," the appropriate customs officer can initiate an administrative forfeiture of such items. 19 U.S.C. § 1607. The statute further outlines the procedures to be followed in the forfeiture. *See id.* Plaintiff's claim that this provision does not provide for administrative forfeiture of money and hence the forfeiture here was unlawful completely ignores the provisions of 21 U.S.C. § 881 on which the government relies as authority to support the actions of DEA.

Pursuant to Section 881(a)(6), "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter" are subject to forfeiture to the United States. 28 U.S.C. § 881(a)(6). Section 881(d) provides that the forfeiture of moneys under Section 881 are to be governed by the same forfeiture procedures already in place for property seized for violation of the customs laws except where inapplicable and not inconsistent with Section 881. *See* 21 U.S.C. § 881(d); *Application of Williams*, 628 F.Supp. at 172. The pertinent customs law governing summary forfeiture is 19 U.S.C. § 1607, which provides for administrative forfeiture of "vessels, vehicles, merchandise or baggage" where the value is $100,000 or less.

It is clear that Section 1607 is applicable only in so far as it outlines the procedures for summary forfeiture where the value of the seized items are, as in this case, $100,000 or less. The reference to the customs laws in Section 881(d) is only for the purpose of delineating the procedures to be followed not for the purpose of identifying the category of items that may be seized. Accordingly, it is immaterial that Section 1607 does not refer to money. The seizure of moneys traceable to violations of the controlled substances provisions is plainly authorized by 21 U.S.C. § 881(a)(6).

Consequently, Section 881, read in conjunction with 19 U.S.C. § 1607 expressly allows for the administrative forfeiture of $100,000 or less in money used in connection with a controlled substance violation. Plaintiff cites no authority to contradict this reading of the interrelation between 21 U.S.C. § 881 and the customs forfeiture laws. Indeed, the cases discussing forfeitures similar to the forfeiture in this case support this interpretation. *See In re Harper*, 835 F.2d 1273 (8th Cir.1988); *Boyd v. U.S. Dep't of Justice*, 673 F.Supp. 660 (E.D.N.Y.1987); *LaChance v. Drug Enforcement Admin.*, 672 F.Supp. 76 (E.D.N.Y.1987).

Plaintiff raises a federal question under 28 U.S.C. § 1331 in his claim that the notice he received of the pending forfeiture proceeding failed to comport with the requirements of the Due Process Clause of the Fifth Amendment. Accordingly, the court has jurisdiction to hear this claim.

■ Reaching the merits of the claim, however, I conclude on the basis of the undisputed facts that the United States is entitled to summary judgment. *See* Fed.R. Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244–52, 106 S.Ct. 2505, 2508–12, 91 L.Ed.2d 202 (1986); *Eastman Machine Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988).

There is no genuine issue of fact that plaintiff received the DEA Notice of Seizure.[9] He admits signing the receipt for the notice. The issue before the court is whether this document constituted sufficient notice.

Plaintiff asserts that "forfeiture proceedings are difficult for lay persons to understand" (Plaintiff's Brief at 6) and that DEA's notice was inadequate to apprise him of the forfeiture process because he "did not understand what was required of [him] in order to obtain the return of [his] money." (Sterling Aff't ¶ 12). Relying on *Willis v. United States*, 787 F.2d 1089 (7th Cir.1986), he contends that constitutionally sufficient notice requires "copies of the applicable statutes and regulations … as well as the telephone number of someone who can explain the procedure." (Plaintiff's Brief at 6).

The standard for sufficient notice under the Due Process Clause is set forth in *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1949), which states that:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time to those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are rea-

sonably met, the constitutional requirements are satisfied.

339 U.S. at 314–15, 70 S.Ct. at 657 (citations omitted).

In *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Court held that the notice given by a power company to its customers prior to terminating their service was constitutionally defective. The issue in that case was "whether due process requires that a municipal utility notify the customer of the availability of an avenue of redress within the organization should he wish to contest a particular charge." 436 U.S. at 13, 98 S.Ct. at 1562. In answering the question in the affirmative, the court held that the notice, which merely informed the customers of the impending termination of service, "was not 'reasonably calculated' to inform them of the availability of 'an opportunity to present their objections' to their bills [since t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and to permit adequate preparation for, an impending 'hearing.' " *Id.* at 14, 98 S.Ct. at 1563 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657). The court further noted that under the circumstances presented in that case—namely, lay consumers of various levels of education, experience, and resources faced with the disruption of electrical service, which is essential for health and safety—the notice should clearly inform the customer of an opportunity to present his complaint. *Id.* n. 15. The court suggested that the notice should have informed the customers "where, during which hours of the day, and before whom disputed bills may be considered." *Id.*

Notice of an impending forfeiture of moneys seized by DEA requires no less notice than was required by the court in *Memphis Light*. Persons facing the loss of potentially large sums of money or valuable property pursuant to the forfeiture laws are also lay persons with varying levels of education, experience, and resources.

---

**9.** Plaintiff admits that he received the envelope from DEA, but claims not to recall whether the notice was in fact inside the envelope. (Sterling Aff't ¶ 11).

*Memphis Light,* 436 U.S. at 14 n. 15, 98 S.Ct. at 1563 n. 15. Under such circumstances, a person facing summary forfeiture is entitled to notice informing him that the action is pending and clearly conveying the information that would allow him an opportunity to present his objections—specifically where, when, and how such objections should be made. *Id.*

The notice given to plaintiff satisfies this standard. It informed him that the currency was seized and the procedures to be followed, including deadlines, to either administratively or judicially contest the seizure. Specifically, plaintiff was instructed to file an original petition and two copies with DEA's Asset Forfeiture Unit within 30 days of receipt of the notice stating why he believed return of the property was justified, along with any proof of his ownership interest, if he was requesting remission [10] or mitigation of the forfeiture. The notice further stated that if plaintiff wanted to contest the forfeiture in United States District Court he should file a claim of ownership and bond in the amount of $2,640, either with a check or through a surety, with DEA.[11] The notice also set forth the address where all correspondence should be submitted, and the sections of the United States Code and Code of Federal Regulations that governed the forfeiture action. In straightforward terms, this notice apprised plaintiff of (1) the pendency of the action, (2) the opportunity to present his objections, and (3) where, when, and how to object.

Plaintiff's reliance on *Willis v. United States,* 787 F.2d 1089 (7th Cir.1986) for the proposition that the notice is defective because it failed to include copies of the applicable statutes and regulations and a telephone number of someone who could explain the procedure is misplaced. In *Willis,* the plaintiff claimed that he did not understand from the face of the notice that electing an administrative remedy, as he did, would waive his right to contest the seizure in district court. The court held

that this deficiency was cured because copies of the regulations, which explained the election, were enclosed with the notice. *See* 787 F.2d at 1093. *Willis* cannot be read to hold that such notice is always required regardless of the circumstances of the case or the nature of the claimed deficiency. *See Dennis v. City of Chicago,* 1989 WL 134512, 1989 U.S.Dist. LEXIS 12299, at 13 (N.D.Ill.) (notice explaining procedures and only referencing relevant C.F.R. sections held sufficient under *Willis*).

Plaintiff here does not raise the claim that was before the court in *Willis.* He does not contend that the notice caused him to make an uninformed choice. Instead, he maintains that it was so unclear that it prevented him from taking any action. This is simply not the case. DEA's notice not only clearly conveys the constitutionally required information, but does so in a manner that is actually *more* understandable than the relevant regulations and statutes. Plaintiff's contention that attaching copies of the statutory and regulatory provisions would have cured this alleged constitutional defect is unavailing given the complexity of these provisions.

The extent of detail that plaintiff claims he was entitled to is simply not a *per se* requirement, let alone a requirement under the facts of this case. *See McCahey v. L.P. Investors,* 774 F.2d 543, 550–51 (2d Cir.1985) (holding that notice of existence of procedures for judgment debtors to adjudicate exemption claims by reference to statutory sections of state civil practice rules coupled with advice to seek counsel satisfied the due process standards set forth in *Memphis Light*). The standard is not the best possible notice that DEA could give, but rather notice of such nature as to reasonably convey where, when, and before whom to present his objections. *Memphis Light,* 436 U.S. at 14 n. 15, 98 S.Ct. at 1563 n. 15; *Mullane,* 339 U.S. at 314–15, 70 S.Ct. at 657–58; *see also Keeler v. Joy,* 641 F.2d 1044, 1049 (2d Cir.), *cert. denied,* 454

---

**10.** The word "pardon" appears in parentheses next to the word "remission," indicating what was meant by remission.

**11.** The notice also summarized the procedure to be followed to proceed *in forma pauperis.*

U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981) (Tenney, J., concurring)[12] (stating that although the challenged notices were not "models of clarity and draftsmanship and could be easily improved," due process only demanded that the plaintiffs be informed of their opportunity to object and be supplied with enough information for them to adequately prepare for this opportunity).

Moreover, even assuming such detail was constitutionally required, it could have been obtained through a reasonable inquiry. *See Soberal–Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir.1983) (quoting *Commonwealth v. Olivo*, 369 Mass. 62, 69, 337 N.E.2d 904 (1975) and *Essex Nat'l Bank v. Hurley*, 16 F.2d 427, 428 (1st Cir.1926)) ("[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop"). Plaintiff was provided with the address of DEA's Asset Forfeiture Unit, if he needed further information, and the citations to the relevant statutes and regulations, if he desired more detail about the forfeiture process.

In sum, although I find that this court does have jurisdiction to hear plaintiff's claim of lack of sufficient notice, I conclude that the notice provided by DEA in this case was constitutionally sufficient.

### C. Federal Tort Claims Act

■ Plaintiff also asserts that this court has jurisdiction against the United States under the FTCA based on his claim that DEA agents converted his money when they seized it without justification. The FTCA provides, in part, that:

Subject to the provisions of chapter 171 of this title, the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The government contends that DEA's seizure falls within the exception to the FTCA set forth in 28 U.S.C. § 2680(c), which provides that the FTCA is inapplicable to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). In this case, there is no dispute that the officers who seized plaintiff's money were not "officers of customs or excise." The issue presented is whether DEA agents in this case are "other law enforcement officer[s]" within the meaning of Section 2680(c).[13]

Both the Supreme Court and the Second Circuit have declined to rule on whether the reach of the phrase "other law enforcement officer" extends to federal officials not engaged in customs-related functions. *See Kosak v. United States*, 465 U.S. 848, 852 n. 6, 104 S.Ct. 1519, 1522 n. 6, 79 L.Ed.2d 860 (1984); *Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 823–24 (2d Cir.1985). In *Formula One Motors*, the court applied Section 2680(c) to the seizure of an imported automobile by DEA agents who were searching for smuggled narcotics. The court noted the ambiguity of the reach of the phrase "other law en-

---

**12.** Judge Moore, who authored the opinion of the court, noted that he "is also in agreement with Judge Tenney's well-reasoned, and well-written concurring opinion." *Keeler*, 641 F.2d at 1047.

**13.** There appears to be no reason to treat money differently than goods or merchandise in this situation. *United States v. $149,345 United States Currency*, 747 F.2d 1278, 1283 (9th Cir. 1984). The term "goods" generally includes money. *See Patton v. Brady*, 184 U.S. 608, 613, 22 S.Ct. 493, 494, 46 L.Ed. 713 (1902) (money considered goods under common law); U.C.C. § 2–105 comment 1 (money considered the equivalent of goods when it is the subject matter of a transaction).

forcement officer," but held that it at least applied to federal officers engaged in conduct "sufficiently akin to the functions carried out by Customs officials," such as the seizure of an automobile still in transit from overseas. 777 F.2d at 823–24.

The circuits that have addressed the issue of whether Section 2680(c) applies outside of the customs or excise context, however, have applied the exception to situations involving neither customs officials nor customs-related activities. *See United States v. $149,345 United States Currency*, 747 F.2d 1278, 1283 (9th Cir.1984) (applying the exception to the seizure of money by DEA agents pursuant to 21 U.S.C. § 881); *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1490–91 (10th Cir.), *cert. denied*, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984) (applying the exception to the seizure of adulterated beef by officials of the U.S. Department of Agriculture pursuant to the Meat Inspection Act); *United States v. Lockheed L–188 Aircraft*, 656 F.2d 390, 397 (9th Cir.1979) (applying the exception to the seizure of an aircraft by officials of the Federal Aviation Administration for violations of air safety regulations); *United States v. 1500 Cases, More or Less*, 249 F.2d 382, 384 (7th Cir. 1957) (applying the exception to the seizure of adulterated food by U.S. Marshals for violations of the Federal Food, Drug, and Cosmetic Act).

In *Ysasi v. Rivkind*, 856 F.2d 1520 (Fed. Cir.1988), the court endorsed the view that Section 2680(c) should be read broadly to encompass all federal law enforcement officers, and held that the exception applied to the seizure by Immigration and Naturalization Service (INS) officers of a truck used to transport an illegal alien within the United States in violation of 8 U.S.C. § 1324. 856 F.2d at 1524–25. Citing *Formula One Motors*, the court reasoned that the INS seizure was sufficiently akin to a customs function because of the direction in Section 1324(b)(3) that all provisions of law relating to seizures for violation of the customs laws shall apply to seizures under Section 1324(b)(1). According to the court in *Ysasi*, this incorporation established the similarity of customs law violations and the violations at issue in that case. *Id.* at 1525.

In this case, as in *Ysasi*, the drug enforcement provisions of 21 U.S.C. § 881 incorporate the seizure and forfeiture provisions of the customs laws. *Compare* 21 U.S.C. § 881(d) *with* 8 U.S.C. § 1324(b)(3). Under the reasoning of *Ysasi*, this incorporation provides the similarity to customs functions necessary to bring the case within the holding of *Formula One Motors*. I conclude in any event that the question left unanswered in *Formula One Motors*, namely, "whether the exemption would apply to searches by law enforcement officers with no relationship to customs or excise functions," 777 F.2d at 823–24, should be answered in the affirmative. As noted, all circuits that have addressed the question have applied the exception broadly to include a variety of governmental seizures unrelated to customs activities. *See, e.g., 2,116 Boxes of Boned Beef*, 726 F.2d at 1490–91. This reading of the statute is not contradicted by either the language of Section 2680(c) or by its legislative history. *Ysasi*, 856 F.2d at 1525; *see also Kosak*, 465 U.S. at 855–57, 104 S.Ct. at 1524–25. Moreover, this interpretation comports with the general policy behind Section 2680(c) of limiting governmental liability under the FTCA where adequate remedies, in this case the statutory procedures of the forfeiture laws, are available. *See Kosak*, 465 U.S. at 858, 104 S.Ct. at 1525; *$149,345 United States Currency*, 747 F.2d at 1283.

In sum, I conclude that Section 2680(c) applies under the circumstances presented here, and plaintiff's claim against the United States under the FTCA should be dismissed.

## II. *Plaintiff's Cross–Motion to Strike*

■ Plaintiff has moved pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike defendants' First, Second, Third, Fourth, and Eighth Defenses as insufficient.

In view of my recommendation that the complaint be dismissed as to Defendants United States and DEA, plaintiff's motion

with respect to the defenses as they apply to these two defendants is denied.

Plaintiff also seeks to strike the defense of "absolute immunity" asserted by Agent Shields. In the absence of any authority offered by the government in support of the viability of this defense coupled with its apparent concession that plaintiff has stated a *Bivens* claim against Agent Shields, the motion to strike this defense is granted.

## CONCLUSION

In sum, it is respectfully recommended that (1) the motion of defendant Drug Enforcement Administration for lack of subject matter jurisdiction be granted; (2) the complaint against the United States be dismissed on the merits pursuant to Fed.R. Civ.P. 56; and (3) plaintiff's cross-motion to strike be granted-in-part and denied-in-part.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

## APPENDIX

SEIZURE =: 22004     SE =: CJ870059
PROP: 26,400.00USC
ID=:
VALUE: $26400.00
SEIZURE DATE: 11 FEB 87
SEIZURE PLACE: QUEENS, NEW YORK
OWNER: STERLING, MONTE O'BRIAN
SEIZED FROM: STERLING MONTE O'BRIAN
JUDICIAL DIST: NEW YORK EASTERN

Date: Mar 17 1987  Bond required: $ 2 640 00

Sterling Monte O'Brian
2802 Olinville Ave #11C
Bronx New York 10467

## NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture under Title 21, United States Code (USC), Section 881. The seizure date and place, as well as other pertinent information regarding the property are also shown above. Pursuant to Title 19 USC, Sections 1602–1619, and Title 21, Code of Federal Regulations (CFR), Sections 1316.71–1316.81, procedures to administratively forfeit this property are under way. You may petition the DEA to return the property or your interest in it to you (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in *COURT.*

## TO REQUEST REMISSION OR MITIGATION OF THE FORFEITURE

If you want to request the remission (pardon) or mitigation of the forfeiture, submit a petition for remission or mitigation within *thirty (30) days* from your receipt of this notice. Follow the regulations set forth in Title 28, CFR, Sections 9.1–9.7. State the facts and circumstances which you believe justify return of the property or return of your interest in the property. Attach proof of your ownership interest in the property. File an original petition and two copies with the DEA's Asset Forfeiture Unit. No bond is necessary if only a petition is filed.

## TO CONTEST THE FORFEITURE

In the alternative, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, *you must file a claim of ownership and bond* with the DEA. Submit the bond in the amount shown above in a *cashier's check* or a *certified check* payable to the U.S. Department of Justice, or present satisfactory surety.

If you are indigent (needy and poor) you may not have to post the bond. To request a waiver of the bond, you must fully disclose your finances in a signed statement called a "Declaration in Support of Request to Proceed *IN FORMA PAUPERIS* " along with a claim of ownership of the property. Use the format of the *pauperis* declaration following Rule 48 of the Federal Rules of Appellate Procedure, or obtain a form from the DEA field office. The claim of ownership, with either bond or the "Declaration in Support of Request to Proceed *IN FORMA PAUPERIS,*" must be filed within *twenty (20) days* of the *first date* of publi-

cation of the notice of seizure in the Wednesday edition of *USA Today*. The notice will be published three successive weeks. You should review that newspaper for the exact date.

### WHERE TO SUBMIT CORRESPONDENCE

Submit all documents to THE DRUG ENFORCEMENT ADMINISTRATION, OFFICE OF CHIEF COUNSEL, ASSET FORFEITURE UNIT, 1405 I STREET, N.W., WASHINGTON, D.C. 20537. Use the seizure number identifier above in submitting the petition, the claim and bond, or other correspondence with the DEA. Failure to do so may cause delay in DEA's action on this matter.

(s) William J. Snider
William J. Snider
Forfeiture Counsel